IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT AUSTIN,**

      **Plaintiff,**

   v.                                                            **Civil Action No. 2:14-cv-726**
                                                                       **Magistrate Judge Kimberly A. Jolson**

**PICKAWAY CORRECTIONAL
INSTITUTION, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on numerous Motions. Specifically, Defendants have filed a Motion for Judgment on the Pleadings (Doc. 59), a Motion to Dismiss Dr. Khan pursuant to Rule 4(m) of the Federal Rules of Civil Procedure (Doc. 65), and a Motion to Stay Dr. Khan's Due Date to Respond to the Complaint (Doc. 80). Also before the Court is Mr. Austin's Motion to Reopen Discovery and Modify the Case Management Schedule (Doc. 60).

For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings (Doc. 59) and Motion to Dismiss Dr. Khan pursuant to Rule 4(m) (Doc. 65) are **GRANTED**. Further, the Motion to Stay Dr. Khan's Due Date to Respond to the Complaint (Doc. 80) and Mr. Austin's Motion to Reopen Discovery and Modify the Case Management Schedule (Doc. 60) are **DENIED AS MOOT**.

**I.    BACKGROUND**

This Opinion and Order constitutes the Undersigned's first opportunity to render a decision in this case, which has a long and convoluted history. Plaintiff, Robert Austin, is an inmate at the Pickaway Correctional Institution who suffers from polycythemia vera in addition to other conditions. Mr. Austin raises numerous claims in this case pertaining to his medical

treatment. These claims, however, are not new, having been asserted in two prior cases in this Court, namely *Hendricks, et al. v. Kasich, et al.*, Case No. 2:12-cv-729, and *Austin v. Kasich, et al.*, Case No. 2:12-cv-983.

### A. Mr. Austin's Original Case: *Hendricks, et al. v. Kasich, et al.*, Case No. 2:12-cv-729

Mr. Austin asserted claims concerning alleged deliberate indifference to his medical needs originally in *Hendricks, et al. v. Kasich, et al.*, Case No. 2:12-cv-729. Mr. Austin filed the Complaint in that case on October 23, 2012, in conjunction with another inmate, Benjamin Hendricks, and the matter was assigned to Magistrate Judge Mark R. Abel and District Judge George C. Smith. (Case No. 2:12-cv-729, Doc. 3). Proceeding *pro se*, Mr. Austin and Mr. Hendricks alleged that they were housed at Pickaway Correctional Institution and each suffered from different medical conditions that were treated improperly by the defendants. (*See id.*).

The allegations pertaining to Mr. Austin were as follows. Mr. Austin alleged that he had a "Green filter" put in at Ohio State University Medical Center in 1997, while an inmate at Ross Correctional Institution. (*Id.*, ¶ 73). The purpose of the filter was to reduce the risk of blood clots reaching his heart and/or lungs. (*Id.*). Mr. Austin claimed that the filter is effective for only ten years, and he had "made several complaints about it not being replaced and/or removed since 2007. . . . " (*Id.*, ¶ 74). According to Mr. Austin's allegations, the defendants refused to replace the filter or provide him with any other medical alternative; instead, they told him continually not to worry about it. (*Id.*).

Mr. Austin also alleged that the defendants caused him to have a port implanted unnecessarily on February 8, 2011. (*Id.*, ¶ 75–76). Mr. Austin asserted that the defendants failed to flush his port monthly, which is necessary to prevent infections and clotting problems. (*Id.*, ¶ 77). More specifically, Mr. Austin claimed that the failure to flush his port regularly resulted

in an unsuccessful attempt to flush it on February 23, 2012. (*Id*., ¶ 78). On that day, "one of the two ports was clogged and could not be opened even after 2 hours of using Heparin." (*Id*.).

Mr. Austin additionally alleged that the defendants improperly denied him treatment at a wound clinic at Corrections Medical Center, where he was referred by treating institutional physicians, and refused to or failed to administer properly an Unna's (paste) boot for treating his chronic leg ulcers. (*Id*., ¶¶ 82–85). Mr. Austin claimed that the defendants' conduct caused him to administer his own wound treatment in unsterilized environments, which resulted in numerous infections. (*Id*., ¶¶ 85–86). Finally, Mr. Austin asserted that the defendants provided him with insufficient management for the pain he suffers as a result of his condition. (*Id*., ¶¶ 87–90).

On October 23, 2012, Magistrate Judge Abel issued an Initial Screening Report and Recommendation. (Case No. 2:12-cv-729, Doc. 4). In that Report and Recommendation, Magistrate Judge Abel found that "[t]he complaint fails to allege any dates any individual defendant denied Austin treatment" for polycythemia vera, wound care, and pain management. (*Id*. at 12). Accordingly, Magistrate Judge Abel found that the Complaint "fail[ed] to give any individual defendant fair notice of a claim that he or she denied Austin needed treatment for a serious medical need." (*Id*.). Based upon this finding, Magistrate Judge Abel recommended, *inter alia*, that individual "defendants Mona Parks, Dr. Hale, Dr. Khan, and Anthony Ayers be dismissed because the complaint fails to state a claim for a violation of the Eighth Amendment under 42 U.S.C. § 1983 against them." (*Id*. at 13). However, Magistrate Judge Abel found that, at the initial screening stage, the Complaint contained other allegations sufficient to state a claim against defendants John Kasich and Gary Mohr. (*Id*. at 12–13).

Magistrate Judge Abel also ruled that Mr. Hendricks and Mr. Austin had improperly joined as plaintiffs. (*Id*. at 2). Consequently, Magistrate Judge Abel directed the Clerk to open a

separate case for Mr. Austin. The Clerk did so, opening *Austin v. Kasich, et al.*, Case No. 2:12-cv-983. A docket entry on October 23, 2012 states, "Plaintiff Robert Austin has been removed from this case and a new separate case has been opened as case number 2:12CV983 for Robert Austin." The new case was assigned to Magistrate Judge Norah McCann King and Chief District Judge Edmund A. Sargus, Jr.

Despite the opening of the new case on October 23, 2012, Mr. Austin continued to litigate his claims in the original case. Pursuant to a Related Case Memorandum Order, the original case was reassigned to Magistrate Judge Terence P. Kemp and District Judge Michael H. Watson on November 1, 2012. (Case No. 2:12-cv-729, Doc. 9). Mr. Austin and Mr. Hendricks filed a Joint Motion for an Extension of Time to file objections to Magistrate Judge Abel's September 23, 2012 Report and Recommendation on November 7, 2012. (Case No. 2:12-cv-729, Doc. 11). Magistrate Judge Kemp granted that Joint Motion on November 16, 2012, allowing Mr. Austin and Mr. Hendricks until December 3, 2012, to file their objections to Magistrate Judge Abel's Report and Recommendation. (Case No. 2:12-cv-729, Doc. 14).

**B.     Mr. Austin's Separate Case:  *Austin v. Kasich, et al.*, Case No. 2:12-cv-983**

In the meantime, Chief Judge Sargus adopted Magistrate Judge Abel's Report and Recommendation in Case No. 2:12-cv-983 on November 20, 2012. (Case No. 2:12-cv-983, Doc. 6 at 2). In doing so, Chief Judge Sargus noted that Mr. Austin had made no objections to the Report and Recommendation. (*Id.*). Thus, Mona Parks, Dr. Hale, Dr. Khan, and Anthony Ayers were dismissed from the case. (*Id.*).

Pursuant to a Related Case Memorandum Order, the new case was reassigned to Magistrate Judge Kemp and Judge Watson on November 27, 2012. (Case No. 2:12-cv-983, Doc. 10). Defendant Governor Kasich filed a Motion to Dismiss on December 14, 2012. (Case No.

4

2:12-cv-983, Doc. 12).  Mr. Austin and Mr. Hendricks opposed the Motion to Dismiss (Case No. 2:12-cv-983, Doc. 14), and Governor Kasich filed a reply (Case No. 2:12-cv-983, Doc. 25).

On January 2, 2013, Mr. Austin filed an Objection to the Adoption of the Report and Recommendation, explaining that Magistrate Judge Kemp had granted him an extension of time to file his objections in the original case and the time for him "to respond ha[d] not yet elapsed." (Case No. 2:12-cv-983, Doc. 13 at 1).  Thus, Mr. Austin argued that the adoption of Magistrate Judge Abel's Report and Recommendation was premature.  (*Id*.).

On March 14, 2013, Judge Watson issued an Order on Mr. Austin's Objection to the Adoption of the Report and Recommendation.  (Case No. 2:12-cv-983, Doc. 16).  The Order noted the confusion caused by the severing of the cases and that the Motion for Extension of Time had been filed and granted only in the original case, namely Case No. 2:12-cv-729.  (*Id*. at 2).  Thus, Judge Watson granted Mr. Austin fourteen days to file an objection to Magistrate Judge Abel's Report and Recommendation.  (*Id*.).  Shortly after Judge Watson's Order, on March 29, 2013, Magistrate Judge Kemp issued a Report and Recommendation recommending that Governor Kasich's Motion to Dismiss be granted.  (Case No. 2:12-cv-983, Doc. 17).

Mr. Austin filed his Objection to Magistrate Judge Abel's Report and Recommendation on April 1, 2013, also requesting to be "rejoined" with Mr. Hendricks.  (Case No. 2:12-cv-983, Doc. 18).  The defendants filed a response to the Objection on April 15, 2013.  (Case No. 2:12-cv-983, Doc. 21).  Thereafter, Mr. Austin requested an extension to time to file a reply in support of his Objection.  (Case No. 2:12-cv-983, Doc. 22).  On May 7, 2013, Magistrate Judge Kemp granted Mr. Austin's Motion for an Extension of Time, allowing Mr. Austin until May 23, 2013 to file a reply.  (Case No. 2:12-cv-983, Doc. 23).  Mr. Austin did not file a reply by that date.

Instead, Mr. Austin filed a Motion to Voluntarily Withdraw on July 3, 2015. (Case No. 2:12-cv-983, Doc. 25). The Motion provided:

> Plaintiff Robert Austin hereby submits this motion to voluntarily withdraw his claims at this time. Plaintiff is currently dealing with medical complications that may cost him his legs, he is a long term medical inmate with no law library access other than a computer terminal, financially unable to conduct discovery, etc. For these reasons, Plaintiff wishes to withdraw his claims with the option to refile within one (1) year under Ohio Revised Code § 2305.19. . . .

(*Id*. at 1). On the same day, defendants Mr. Mohr, Mr. Eddy, Mr. Gardner, Ms. Parks, Dr. Hale, Dr. Khan, and Mr. Ayers filed a "Stipulation to Plaintiff's Motion to Voluntarily Withdraw." (Case No. 2:12-cv-983, Doc. 26). The "Stipulation" stated:

> Defendants, by and through counsel, do hereby stipulate to the voluntary dismissal of Plaintiff Robert Austin's § 1983 action, Case No. 2:12-cv-983. Defendants further acknowledge that Plaintiff's dismissal shall be without prejudice, thus permitting him to re-file this claim within one-year pursuant to O.R.C. § 2305.19 notwithstanding any other limitations placed on his ability to re-file such as the statute of limitations or other applicable law.

(*Id*. at 1). The Clerk terminated Case No. 2:12-cv-729 on July 5, 2013. Magistrate Judge Kemp's March 29, 2013 Report and Recommendation recommending that Governor Kasich's Motion to Dismiss be granted remained pending at the time the case was terminated. (Case No. 2:12-cv-983, Doc. 17).

### C. Mr. Austin Reopens *Austin v. Kasich, et al.*, Case No. 2:12-cv-983

On May 21, 2014, Mr. Austin filed a *pro se* Motion to Reopen Case and to Appoint Counsel in Case No. 2:12-cv-983. (Case No. 2:12-cv-983, Doc. 27). The defendants did not oppose Mr. Austin's Motion. (*See* Case No. 2:12-cv-983, Doc. 28). Consequently, on July 3, 2014, Magistrate Judge Kemp issued an Order stating, *inter alia*:

> When the parties stipulated to Mr. Austin's voluntary dismissal in accordance with Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure (Docs. 25, 26), Defendants specifically "acknowledge[d] that Plaintiff's dismissal shall be without prejudice, thus permitting him to re-file this claim within one year

6

> pursuant to O.R.C. § 2305.19, notwithstanding any other limitations placed upon his ability to re-file. . . ." (Doc. 26). The parties stipulated to voluntary dismissal on July 3, 2013, and Mr. Austin filed his motion to reopen on May 21, 2014, well within the one-year time frame allowed by O.R.C. §2305.19. Consequently, Mr. Austin's motion to reopen (Doc. 27) is granted. The Clerk is directed to reopen this case on the Court's docket.

(*Id*. at 1–2). Additionally, Magistrate Judge Kemp denied Mr. Austin's request for the appointment of counsel. (*Id*.).

Magistrate Judge Kemp issued a Scheduling Order on October 3, 2014. (Case No. 2:12-cv-983, Doc. 34). Pursuant to that Order, discovery was to be completed by June 30, 2015, and any motions for summary judgment were to be filed by July 31, 2015. (*Id*. at 1). Magistrate Judge Kemp thereafter granted a Motion for Extension of Time filed by Mr. Mohr, allowing until August 14, 2015, to file dispositive motions. (Case No. 2:12-cv-983, Doc. 36).

Mr. Mohr filed his Motion for Summary Judgment on August 14, 2015. (Case No. 2:12-cv-983, Doc. 37). On October 8, 2015, Magistrate Judge Kemp issued an Order noting that Mr. Austin had failed to file a response to the Motion for Summary Judgment. (Case No. 2:12-cv-983, Doc. 38). Magistrate Judge Kemp therefore ordered Mr. Austin to file an opposing memorandum within fourteen days. (*Id*. at 1). Magistrate Judge Kemp warned that Mr. Austin's "[f]ailure to do so may result either in the motion being treated as unopposed, or in dismissal of this action for failure to prosecute." (*Id*.).

Mr. Austin did not file an opposing memorandum or otherwise respond to Magistrate Judge Kemp's October 8, 2015 Order. Hence, on November 10, 2015, Magistrate Judge Kemp issued a Report and Recommendation recommending that the case be dismissed without prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (Case No. 2:12-cv-983, Doc. 39). On December 1, 2015, Judge Watson issued an Order

7

adopting Magistrate Judge Kemp's November 10, 2015 Report and Recommendation.  (Case No. 2:12-cv-983, Doc. 40).

More specifically, Judge Watson adopted a Report and Recommendation that Magistrate Judge Kemp had issued on March 29, 2013 recommending that a Motion to Dismiss filed by Governor Kasich be granted (Case No. 2:12-cv-983, Doc. 17) and ruled that the "case be dismissed without prejudice for failure to prosecute because Plaintiff failed to respond to the remaining Defendant Gary Mohr's motion for summary judgment" (Case No. 2:12-cv-983, Doc. 39).  Judge Watson noted that Mr. Austin failed to file any objections; thus, he adopted the Report and Recommendations (Case No. 2:12-cv-983, Docs. 17, 39), granted Governor Kasich's Motion to Dismiss (Case No. 2:12-cv-983, Doc. 12) and dismissed Mr. Austin's claim against Mr. Mohr without prejudice.  (Case No. 2:12-cv-983, Doc. 40).

### D. The Instant Case

After Mr. Austin filed a *pro se* Motion to Reopen Case and to Appoint Counsel in Case No. 2:12-cv-983 on May 21, 2014, he retained counsel.  However, rather than file a notice of appearance in Mr. Austin's ongoing case which he had sought to reopen, Mr. Austin's counsel filed this case—an entirely new action—based on the same claims.  The Complaint was filed on July 2, 2014, and Mr. Austin paid the full filing fee.  (Doc. 1).

In this case, Mr. Austin again brings claims related to the failure to replace the filter he had installed in 1997 (*id*., ¶¶ 25–26), the unnecessary implantation of a port on February 8, 2011 (*id*., ¶ 27–28), the failure to care for his port properly (*id*., ¶ 29), and the unsuccessful attempt to flush his port on February 23, 2012 (*id*., ¶ 30).  Additionally, Mr. Austin again claims Defendants have improperly denied him treatment at a wound clinic and refused to or failed to properly administer an Unna's (paste) boot for treating his chronic leg ulcers (*id*., ¶¶ 35–37),

forcing him to administer his own wound treatment in unsterilized environments and resulting in numerous infections (*id*., ¶¶ 37–38). Finally, Mr. Austin again asserts that Defendants have provided him a "woefully insufficient" regimen for the "significant pain" he suffers (*id*., ¶¶ 41–42).

In a July 3, 2014 Order and Report and Recommendation, Magistrate Judge King conducted an initial screen of Mr. Austin's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 5). Magistrate Judge King recommended that the Court dismiss all claims against Defendant Pickaway Correctional Institution and all claims for money damages against the individual Defendants in their individual capacities, as well as state law claims for medical malpractice. (*Id.* at 2). However, Magistrate Judge King permitted Mr. Austin's 42 U.S.C. § 1983 claims to proceed against the individual Defendants for denial of medical care. (*Id*.). Mr. Austin filed Objections to the Report and Recommendation. (Doc. 10).

Judge Gregory L. Frost overruled Mr. Austin's Objections and adopted the Report and Recommendation. (Doc. 19 at 4–5). Consequently, the sole claims that remain are under the Eighth and Fourteenth Amendments for the denial of medical care by the individual Defendants. (*See id*. at 5). With the consent of all parties, this action was referred to the Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(c).

On August 15, 2016, this case was reassigned to the Undersigned for all further proceedings. (Doc. 57). Thereafter, Defendants and the State of Ohio filed a Motion for Judgment on the Pleadings (Doc. 59) and Mr. Austin filed a Motion to Reopen Discovery and Modify the Case Management Schedule (Doc. 60). Also before the Court are a Motion to Dismiss Dr. Khan pursuant to Rule 4(m) of the Federal Rules of Civil Procedure (Doc. 65) and a Motion to Stay Dr. Khan's Due Date to Respond to the Complaint (Doc. 80).

## II. MOTIONS CONCERNING DR. KHAN

Defendants have moved to dismiss Dr. Khan pursuant to Rule 4(m) of the Federal Rules of Civil Procedure (Doc. 65) and filed a Motion to Stay Dr. Khan's Due Date to Respond to the Complaint (Doc. 80).  Although service for Dr. Khan originally appeared to be successful (Doc. 22), the summons was returned unexecuted on November 17, 2014, because Dr. Khan was no longer employed at the prison.  (*See* Doc. 23).  The docket does not indicate that any extension of time to serve Dr. Khan was granted.  Nevertheless, service for Dr. Khan was not executed until December 5, 2016 (Doc. 77), more than two years after it was due on November 11, 2014. *See* Fed. R. Civ. P. 4(m) (pre-December 1, 2015 amendment; thus, requiring service within 120 days of filing).

Mr. Austin argues that he should be granted an extension for service and, alternatively, that Dr. Khan waived his arguments pertaining to service.  Here, the Court finds that service was obtained so long after the allowable time that to grant a retroactive extension until December 5, 2016, would be unjust.  And even if, as Mr. Austin contends, Dr. Khan's actions could be construed as constituting a waiver, for the reasons set forth below, this action must be dismissed. Thus, the Motion to Dismiss Dr. Khan pursuant to Rule 4(m) of the Federal Rules of Civil Procedure is **GRANTED** (Doc. 65) and the Motion to Stay Dr. Khan's Due Date to Respond to the Complaint is **DENIED AS MOOT** (Doc. 80).

## III. MOTION FOR JUDGMENT ON THE PLEADINGS

In examining a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999).  Under Rule 12(b)(6), the Court must construe the complaint in favor of the plaintiff, accept all well-pleaded factual

allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the Motion for Judgment on the Pleadings, Defendants argue that Mr. Austin's § 1983 claims are barred by the statute of limitations. (Doc. 59 at 5). In particular, Defendants point to three § 1983 claims they assert are barred by the statute of limitations: (1) Mr. Austin's claim that Defendants failed to replace his filter as required after ten years; (2) Mr. Austin's claim concerning Defendants' unnecessary implantation of the port; and (3) Mr. Austin's claim that Defendants improperly cared for the port, causing it to become clogged. (*Id*. at 6–7). Defendants also argue that they are entitled to qualified immunity. (*Id*. at 9–10).

### A. Statute Of Limitations

The applicable statute of limitations for § 1983 claims arising in Ohio is based on Ohio Revised Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989, 900 (6th Cir. 1989). Ohio Revised Code § 2305.10 requires, *inter alia*, that actions for bodily injury must be brought within two years after their accrual. *Id.*; *see also Burress v. Hamilton Cty. Criminal Investigations Section Unit*, No. 1:14-cv-390, 2014 WL 6673663, at *3 (S.D. Ohio Nov. 21, 2014) (noting that the *Browning* decision, applying Ohio Revised Code § 2305.10's two-year statute of limitations to § 1983 claims arising in Ohio "consistently has been reaffirmed").

"In actions brought under 42 U.S.C. § 1983, the statute of limitations commences to run

11

when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Cooper v. City of Westerville, Ohio*, No. 2:13-cv-427, 2014 WL 617650, at *4 (S.D. Ohio Feb. 18, 2014) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). The plaintiff "has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *see also Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003) ("In determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights."). For claims based upon an alleged deliberate indifference to a prisoner's serious medical needs, the cause of action accrues when the prisoner is denied medical care. *Brookes v. Shank*, No. 2:13-cv-516, 2014 WL 32306, at *2 (S.D. Ohio Jan. 6, 2014). However, "[a]ctual actions . . . of refusing medical care represent discrete unlawful actions (beyond passive inaction) that trigger the statute of limitations." *Bruce v. Corr. Med. Servs., Inc.*, 389 Fed. App'x 462, 467 (6th Cir. 2010).

### 1. Ohio's Savings Statute

Ohio Revised Code § 2305.19(A), the relevant statute, provides that if, "[i]n any action that is commenced[,] . . . the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after . . . or within the period of the original applicable statute of limitations, whichever occurs later. . . ." *Id.* Thus, to fall under the relevant provisions of Ohio's Savings Statute, the plaintiff's claims must have failed otherwise than upon the merits, and the plaintiff must have re-filed those claims either within one year or within the period of the original statute of limitations, whichever occurs later. *See id.* A plaintiff's voluntary dismissal constitutes a failure "otherwise than on the merits" for the purposes of Ohio's Savings Statute. *Costell v. Toledo Hosp.*, 38 Ohio St. 3d 221, 223 (1988).

Mr. Austin argues that his claims are preserved by Ohio's Savings Statute based on Case No. 2:12-cv-983, the original case he filed on October 23, 2012, and dismissed voluntarily on July 3, 2013. (*See* Doc. 70 at 4). However, "R.C. 2305.19 states that the plaintiff has the right to file a new action, not multiple actions." *Graf v. Cirino*, No. 96011, 2011 WL 2731355, at *1 (Ohio Ct. App. July 14, 2011) (quoting *Koslen v. Am. Red Cross*, No. 71733, 1997 WL 547838, at *2 (Ohio Ct. App. Sept. 4, 1997)). Stated simply, "the savings statute can be used only once to refile a case." *Thomas v. Freeman*, 79 Ohio St. 3d 221, 227 (1997). Thus, question here is whether Mr. Austin's decision to reopen Case No. 2:12-cv-983 was an exercise of his right under Ohio's Savings Statute to bring a "new" action, thereby precluding him from bringing this case.

Magistrate Judge Kemp addressed a similar question in Case No. 2:12-cv-729. On May 21, 2014 (the same day Mr. Austin filed a *pro se* Motion to Reopen Case and to Appoint Counsel in Case No. 2:12-cv-983), Mr. Hendricks filed a Motion to Voluntarily Dismiss Case No. 2:12-cv-729. (Case No. 2:12-cv-729, Doc. 42). Following a Report and Recommendation recommending dismissal (Case No. 2:12-cv-729, Doc. 43), the Court dismissed the case without prejudice on November 25, 2014. (Case No. 2:12-cv-729, Docs. 45–46). Mr. Hendricks filed a Motion to Reopen his case on October 5, 2015. (Case No. 2:12-cv-729, Doc. 48).

In considering the Motion to Reopen, Magistrate Judge Kemp found the:

> motion suggests that [Mr. Hendricks] is now ready to pursue claims he had previously sought to have voluntarily dismissed for health reasons. This understanding is consistent with Mr. Hendricks' discussion of the Ohio savings statute in his motion to voluntarily dismiss his complaint without prejudice.

*Hendricks v. Kasich*, No. 2:12-cv-729, 2016 WL 1019259, at *2 (S.D. Ohio March 15, 2016). Consequently, and in light of Mr. Hendricks' *pro se* status, Magistrate Judge Kemp construed the Motion to Reopen "as his attempt to comply with the savings statute and to pursue his claims by way of a new civil action." *Id*. The Court thus granted the Motion to Reopen and construed the

13

case to be a "new" action for purposes of the Ohio Saving Statute that was filed on October 5, 2015, the filing date of the Motion. *Id*.

Magistrate Judge Kemp's decision is consistent with Ohio case law. *See, e.g.*, *King v. Ricerca Biosciences, LLC*, No. 2005-L-068, 2006 WL 1133214, at *2 (Ohio Ct. App. Apr. 28, 2006) (finding that the plaintiff's decision to reopen the case rather than refile under a new case number did not preclude him from maintaining his action under Ohio's Savings Statute); *see also Koslen*, 1997 WL 547838, at *2 ("A number of appellate cases have directly held that the savings statute can be used only once.") (citing *Hancock v. Kroger*, 103 Ohio App. 3d 266, 269 (1995); *Iglodi v. Montz*, No. 68621, 1995 WL 516609, at *2 (Ohio Ct. App. Aug. 31, 1995); *Worytko v. Feng*, No. 72049, 1997 WL 379968, at *3 (Ohio Ct. App. July 3, 1997); *Seawright v. Zabell*, No. 55232, 1989 WL 42251, at *2 (Ohio Ct. App. Apr. 27, 1989); *Mocker v. Goldsmith*, No. 94 C.A. 169, 1996 WL 172376, at *3 (Ohio Ct. App. Apr. 2, 1996); *Gailey v. Murphy*, No. C.A. 15805, 1993 WL 46647, at *2 (Ohio Ct. App. Feb. 24, 1993); *Nagy v. Patterson*, No. 94 CA005837, 1994 WL 619797, at *2 (Ohio Ct. App. Nov. 9, 1994)). It is logical that "[t]he savings statute can be used only once, because otherwise, a plaintiff could infinitely refile his action, and effectively eliminate statutes of limitations." *Id*.

Based on the foregoing, the Court finds that when Mr. Austin filed his *pro se* Motion to Reopen Case in Case No. 2:12-cv-983, he did so in an effort to pursue his claims under the Savings Statute. *See Hendricks*, 2016 WL 1019259, at *2. Thus, Mr. Austin's reopening of that case constituted his single opportunity to maintain a "new action" under the statute, and that "new action" was commenced on May 21, 2014, the day he filed the Motion to Reopen. (Doc. 27); *see Hendricks*, 2016 WL 1019259, at *2.

In the November 10, 2015 Report and Recommendation in Case No. 2:12-cv-983, Magistrate Judge Kemp stated:

> The facts of this case indicate a clear failure to prosecute. The Court specifically advised plaintiff in its prior order that this action would be dismissed if plaintiff failed to respond. That order has not been returned as undeliverable and the Court assumes that plaintiff received it. Plaintiff has not offered any explanation for the failure to respond. Therefore, the Court can only conclude that the failure is intentional. An intentional failure to respond to a court order is sufficient justification for a dismissal.

(Case No. 2:12-cv-983, Doc. 39 at 2). Consequently, Magistrate Judge Kemp recommended that Case No. 2:12-cv-983 be dismissed without prejudice under Rule 41(b) of the Federal Rules of Civil Procedure. (*Id.*). Judge Watson adopted that Report and Recommendation (*see* Case No. 2:12-cv-983, Docs. 40–41).

The relevant portion of the opposition to the Motion for Judgment on the Pleadings ignores the fact Mr. Austin used his right to file a "new action" under Ohio's Savings Statute in Case No. 2:12-cv-983. (*See* Doc. 70 (claiming "this refiled case was filed within one year of the voluntary dismissal of the originally filed case"). Doing so rendered this case untimely and prohibited under the relevant case law. *See, e.g.*, *Graf*, 2011 WL 2731355, at *1 (holding plaintiff could not invoke savings statute a second time); *Koslen*, 1997 WL 547838, at *2 (same).

Finally, the Court can speculate that perhaps Mr. Austin opted not to prosecute the "new action" after he reopened it because he subsequently obtained counsel. Although Mr. Austin may not have realized the implications of reopening his original action, he should have known based on Magistrate Judge Kemp's warning that his intentional failure to respond would result in dismissal. Moreover, Mr. Austin's counsel should have known that merely ignoring the reopening of the case and filing a new action was contrary to the case law concerning Ohio's Savings Statute. For these reasons, this action is **DISMISSED** as untimely.

### B. The Merits And Statute of Limitations (Again)

Even if this case were not time barred, Mr. Austin's claims would fail on the merits. In order to plead a cause of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: "(1) a deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). As Magistrate Judge Abel found in the Initial Screening Report and Recommendation in the original case (Case No. 2:12-cv-729, Doc. 4), "[t]he complaint fails to allege any dates any individual defendant denied Austin treatment" for polycythemia vera, wound care, and pain management (*id*. at 12). Accordingly, the Complaint "fails to give any individual defendant fair notice of a claim that he or she denied Austin needed treatment for a serious medical need." (*Id*.). Because the Complaint is devoid of any factual content that would allow the Court to draw the reasonable inference that Defendants are liable for the alleged violation of Mr. Austin's rights, *see Iqbal*, 556 U.S. at 678, it is insufficient.

Furthermore, even if Mr. Austin had pursued his claims pertaining to the filter in his reopened case, that claim would be barred by the statute of limitations. More specifically, Mr. Austin asserts deliberate indifference to his serious medical needs beginning with Defendants' failure to replace his filter in 2007, ten years after it was installed. (Doc. 1, ¶ 26). At that time, Defendants allegedly refused to replace the filter or provide Mr. Austin with any other medical alternative, telling him "not to worry about it." (*Id*.). The failure to replace the filter in 2007 is an event that should have alerted the typical lay person to protect his rights. *See Trzebuckowski*, 319 F.3d at 856. Because that claim needed to be brought within two years after accrual, *see Cooper*, 2014 WL 617650, at *4, any action for it filed after 2009 would be barred by the statute of limitations.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (Doc. 59) and Motion to Dismiss Dr. Khan pursuant to Rule 4(m) (Doc. 65) are **GRANTED**. The Clerk shall **DISMISS** this case against Dr. Khan and enter **JUDGMENT** in favor of the remaining Defendants and against Mr. Austin. The Motion to Stay Dr. Khan's Due Date to Respond to the Complaint (Doc. 80) and Mr. Austin's Motion to Reopen Discovery and Modify the Case Management Schedule (Doc. 60) are **DENIED AS MOOT**.  This case is **TERMINATED**.

IT IS SO ORDERED.

Date:  February 13, 2016                              /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE